**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| **BITCANARY, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.** |
| | ) | |
| **MINECORE, LLC,** | ) | JURY DEMAND |
| **SAAMAR SIDDIQUI and** | ) | |
| **GEORGE BALTES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

# COMPLAINT

Now comes BitCanary, LLC ("Plaintiff" or "BitCanary"), by and through its attorneys, Michael Shacter of Shacter Law and states for its Complaint against Minecore, LLC ("Minecore"), Saamar Siddiqui ("Siddiqui") and George Baltes (Minecore, Siddiqui and Baltes are collectively known as "Defendants") as follows:

## PARTIES

1. Plaintiff is a Wyoming Limited Liability Company with its principal place of business in 5830 E 2nd St., Suite 7000, Casper Wyoming.

2. Plaintiff's Manager and member is Diego Martin Duro, a Resident of Spain ("Martin Duro")

3. Minecore is a Florida limited liability company with its principal place of business in North Dakota.

4. On information and belief, the Manager and Member of Minecore is George Baltes, who may be a New York resident.

5. On information and belief Siddiqui is a California resident.

## JURISDICTION AND VENUE

6. Jurisdiction is appropriate in this Court pursuant to 28 U.S.C. § 1332. The parties are citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of interest and cost.

7. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this district, Minecore resides in this district and North Dakota public is impacted by the improper actions.

## BACKGROUND

8. Plaintiff is a Bitcoin mining startup.

9. On or before March 2025, Plaintiff paid $388,098.70 for 94 units of Bitcoin mining hardware and equipment ("Equipment").

10. Plaintiff required a host to support the Equipment's operation.

11. On or about March 2025, Martin Duro, as Plaintiff's agent, was introduced to Siddiqui by a third party.

12. On or about March 2025, Siddiqui represented to Plaintiff that Defendant Minecore provides storage and hosting services for data mining clients at 320 8th Street, West, West Fargo, ND 58078 ("North Dakota Site").

13. Siddiqui represented to Plaintiff that the North Dakota Site could support Plaintiff's Equipment and operations.

14. On or about 3/18/25, as part of Plaintiff's due diligence, Martin Duro traveled from Spain to meet Siddiqui at the North Dakota Site.

15. Plaintiff's agent, Martin Duro, toured the North Dakota Site with Siddiqui.

16. During Plaintiff's visit at the North Dakota Site, Siddiqui represented to Plaintiff that the North Dakota Site was capable of securely hosting the Equipment.

17. On or about 3/25/25, Defendants sent a proposal to Plaintiff offering to provide hosting services for Plaintiff's Equipment at the North Dakota Site.

18. Siddiqui represented to Plaintiff that the proposed agreement included a provision providing "all-risk" property liability insurance.

19. On or about 3/25/25, Defendants represented to Plaintiff that theft is covered by the "all risk" property liability insurance.

20. In reliance on Defendants' representation that the North Dakota Site could host the Equipment, provide security for the Equipment and insurance in the event of theft of the Equipment, on or about 3/25/25, Plaintiff signed the Service Agreement ("Agreement") and returned it to Defendants. The Agreement is attached as **Exhibit 1**.

21. On or about 5/8/25, the Equipment was shipped from Kuala Lumpur, Malaysia for initial delivery to O'Hare Airport, Chicago, Illinois.

22. On information and belief, on 5/25/25, the Equipment was delivered to O'Hare Airport in Chicago, Illinois**.**

23. On information and belief, on 5/15/25, the Equipment were transferred from O'Hare Airport to DIT Chicago Corp. Warehouse in Itasca, Illinois.

24. On 4/14/25, Plaintiff wired $14,775 to Defendants pursuant to the Agreement.

25. On 5/20/25, Siddiqui represented to Plaintiff that the Equipment was delivered to the North Dakota Site.

26. In reliance on Siddiqui's representation, on 5/20/25, Plaintiff wired a payment of $14,775 to Defendants pursuant to the Agreement.

27. Defendants represented to Plaintiff that the Equipment would be installed on 5/21/25.

28. Between 5/20/25 and 6/15/25 no action was taken to install the Equipment.

29. On June 15, 2025, Martin Duro visited the North Dakota Site and Siddiqui represented to him that the Equipment had been stolen.

30. Plaintiff demanded Defendants refund Plaintiff's deposit and pay for the value of the Equipment.

31. Plaintiff demanded that Defendants produce Defendants' insurance information so Plaintiff could file a claim.

32. Defendants failed and refused to refund Plaintiff's deposit, the value of the Equipment or provide information regarding insurance coverage.

33. At all relevant times, Defendants knew that it had no intent to host the Equipment.

34. At all relevant times Defendants knew that they did not possess an insurance policy to cover theft of the Equipment.

35. In reliance upon Defendants' representations, Plaintiff sent money and the Equipment to Defendants.

**COUNT I**
**(DECLARATORY JUDGMENT)**

36. Plaintiff restates Paragraphs 1-35 as Paragraph 36.

37. There is an actual controversy between the parties as to the construction and validity of the Agreement

38. Plaintiff asserts that the Agreement is void or voidable because Defendants engaged in fraudulent misrepresentation to induce Plaintiff to execute the Agreement, pay the Deposit and transfer the Equipment into Defendants' possession with no intent to provide hosting services for the Equipment.

39. The Agreement must be deemed void or voidable due to Defendants' fraudulent conduct.

40. Plaintiff has a legal tangible interest in the controversy and has standing to bring this claim.

41. Defendants have an adverse interest.

42. The controversy is justiciable and ripe for the Court's declaration of rights.

WHEREFORE, Plaintiff prays for the Court to declare that the Agreement is void or voidable, rescind the same and order further relief as the Court may deem just and proper.

**COUNT II**
**(RECISSION OF AGREEMENT)**

43. Plaintiff restates Paragraphs 1 through 42 as Paragraph 43.

44. Defendants represented that if Plaintiff entered into the Agreement and transferred the Equipment to the North Dakota Site and wired a deposit to Defendants, the North Dakota Site would host the Equipment.

45. Defendants represented that they would provide security for the Equipment at the North Dakota Site.

46. Defendants represented that they possessed an insurance policy that would indemnify Plaintiff in the event of theft.

47. Plaintiff entered into the Agreement in reliance on Defendant's representations that the North Dakota Site would provide security for the Equipment.

48. Plaintiff entered into the Agreement in reliance on Defendant's representation that Defendants purchased liability insurance for the North Dakota Site that would include indemnification if the Equipment were stolen.

49. Defendants used the North Dakota Site as part of Defendants' fraudulent scheme to lure Plaintiff into transferring assets valued at $417,848.70 into Defendants' control at the North Dakota Site.

50. Defendants' material omissions, concealments, and misrepresentations were intended to induce Plaintiff to sign the Agreement which must be deemed null and void and should be rescinded.

51. Defendants intended for Plaintiff to transfer control of the Equipment into the control of Defendants at the North Dakota Site so that Defendants could retain possession.

52. Defendants never intended to provide security at the North Dakota Site.

53. Defendants had no intent to host the Equipment at the North Dakota Site.

54. Defendants did not have insurance to indemnify theft of the Equipment.

55. Defendants representations were material to Plaintiff's decision to execute the Agreement, and Plaintiff relied upon this representations in executing the Agreement.

56. Defendants intended for Plaintiff to rely upon and knew that Plaintiff relied upon the representations, and Plaintiff's reliance was justified and reasonable.

57. As a direct and proximate result of the Defendants' material omissions, material concealments, and material misrepresentations that the North Dakota Site would accommodate the Equipment Plaintiff will be damaged in the absence of rescission of the Agreement.

58. Plaintiff sought rescission of the Agreement upon learning of the theft.

59. Accordingly, Plaintiff seeks rescission of the Agreement.

60. Plaintiff. has no adequate remedy at law.

WHEREFORE, Plaintiff prays that the Court enter an order rescinding the Agreement and for such other and further relief as to the Court may deem just and proper.

**COUNT III**
**(REPLEVIN- MINECORE, SIDDIQUI AND BALTES)**

61. Plaintiff restates Paragraphs 1-60 as Paragraph 61.

62. On information and belief, Defendants and/or their agents are in possession of the Equipment in North Dakota.

63. Plaintiff has paid all amounts due to Defendants and complied with the Agreement's obligations.

64. Pursuant to the Agreement, Defendants are obligated to provide Plaintiff access to the Equipment.

65. On information and belief Defendants and/or their agents are wrongfully holding and detaining the Equipment.

66. Defendants have no ownership right to the Equipment.

67. Defendants have no right to prevent Plaintiff from accessing the Equipment.

68. The Equipment has not been taken for any tax, assessment or fine levied by virtue of any law, nor seized under any lawful process or against the goods and chattels of Plaintiff subject to such lawful process, nor held by virtue of any order of replevin against Plaintiff.

69. The value of the Property is more than $400,000.

70. Defendant has refused Plaintiff's demands to provide access or information about the Equipment.

71. Plaintiff is dependent upon the Equipment to operate its business.

72. Plaintiff will face irreparable harm if not provided immediate access to the Equipment which is integral to Plaintiff's business operations, and Plaintiff's inability to access and maintain the Equipment in full working order jeopardizes the operation of Plaintiff's business.

73. The Equipment is sensitive and valuable electronic equipment at risk of being damaged or destroyed if not maintained in a secure and climate-controlled environment and the exposure of the Equipment to environmental hazards could adversely affect its operation.

WHEREFORE, Plaintiff prays for judgment in its favor and against Defendants that upon locating the Equipment this Court grant Plaintiff immediate issuance of an Order of Replevin against Defendants granting possession of the Property to Plaintiff.

**COUNT IV**
**(DETINUE-MINECORE, SIDDIQUI and BALTES)**

74. Plaintiff restates Paragraphs 1 through 73 as Paragraph 74.

75. Defendants' refusal to return the Equipment constitutes wrongful detention.

76. Plaintiff is entitled to a return of the Equipment.

WHEREFORE, Plaintiff respectfully requests this Court to: (a) Compel Defendant to identify the location and return the Equipment within 14 days, (b) for a judgment against Defendant for wrongful detention of the Equipment; (c) For attorney fees and costs of this action and for moving the Equipment; and (d) For any further relief as this Court deems just.

**COUNT V**
**(CONVERSION-MINECORE, SIDDIQUI and BALTES)**

77. Plaintiff restates Paragraphs 1-76 as Paragraph 77.

78. On information and belief Defendants have the Equipment in their possession or have knowledge of the Equipment's location.

79. Defendants are precluded from wrongfully detaining the Equipment.

80. Plaintiff has the right of immediate possession of the Equipment.

81. When the possessor of such property refuses the demand of a person with a superior possessory interest in such property to return it, the law makes the wrongful possessor of such property liable for conversion.

82. Plaintiff is the rightful owner of the Equipment, has had a legal possessory interest in the Equipment superior to Defendants, and is entitled to immediate possession of the Equipment.

83. Before this action was commenced, Plaintiff and their attorneys demanded that Defendants return the Equipment, but Defendants ignored and refused this demand.

84. Defendants wrongfully detained and withheld the Equipment in violation of Plaintiff's rights.

WHEREFORE, Plaintiff respectfully requests that this Court enter Judgment in its favor and Defendants in the amount of $417,608.70, for the value of the Equipment and Deposit, compensatory damages for lost profit and revenue, pre-judgment interest, attorney fees and costs.

**COUNT VI**
**(COMMON LAW FRAUD)**

85. Plaintiff restates Paragraphs 1-84 as Paragraph 85.

86. On and before March 2025, Defendants represented to Plaintiff that the North Dakota Site could host Plaintiff's the operation of Bitcoin mining servers and hardware.

87. Defendants represented to Plaintiff that it possessed an insurance policy that would cover the loss of the Equipment in the event of theft.

88. Defendants represented to Plaintiff that they could host the Equipment and possessed an insurance policy to cover the Equipment's loss to induce Plaintiff to send a deposit and the Equipment to the Site.

89. At all relevant times, Defendants knew that it had no intent to host the Equipment.

90. At all relevant times Defendants knew that they did not possess an insurance policy to cover theft of the Equipment.

91. In reliance upon Defendants' representations, Plaintiff sent money and the Equipment to Defendants.

92. As a result of the Defendants' fraudulent representations and receipt of Plaintiff's Property, Plaintiff has incurred damages in excess of $420,000, lost profits and attorney fees.

WHEREFORE, Plaintiff respectfully requests that this Court enter Judgment in its favor and against Defendants in the amount of $417,608.70, for the value of the Equipment and Deposit, compensatory damages for lost profit and revenue, pre-judgment interest, attorney fees and costs.

**COUNT VII**
**(UNJUST ENRICHMENT- MINEOCORE, SIDDIQUI AND BALTES)**

93. Plaintiff restates Paragraphs 1-92 as Paragraph 93.

94. Defendants misappropriated the Equipment.

95. On information and belief Defendants and its agents have reaped financial gain from using or commercially exploiting the Equipment in addition to the receipt o the Deposit.

96. Plaintiff is entitled to an award for the value of the servers, the Deposit and any proceeds Defendants and/or in an amount reflecting any proceeds Defendants and/or their agents have received relating to Defendants' misappropriation of the Equipment.

WHEREFORE, Plaintiff respectfully requests that this Court enter Judgment in its favor and against Defendants for the value of the Equipment, Deposit and any amounts wrongfully gained by Defendants.

**BITCANARY, LLC**

One of its Attorneys

Michael Shacter
Shacter Law and
Of Counsel to Centaurus Legal Services, P.C.
1603 Orrington Ave., Suite 600
Evanston IL 60602
847-942-7208
mshacter@shacterlawfirm.com